UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FRANCISCO SOARES,<br><br>*Plaintiff*,<br><br>*v.*<br><br>ALTICE TECHNICAL SERVICES US, LLC, D/B/A OPTIMUM<br><br>*Defendant*. | Civil No. 3:19-cv-1975 (JBA)<br><br>August 6, 2021 |

**RULING GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Francisco Soares filed this lawsuit in the Connecticut Superior Court against Altice Technical Services US, LLC d/b/a Optimum (ATS) for race and age discrimination in violation of the Connecticut Fair Employment Practices Act (CFEPA), negligent misrepresentation, and promissory estoppel. Defendant removed the lawsuit to federal court on diversity grounds. (Pet. for Removal [Doc. # 1] ¶ 2.) Defendant now moves for summary judgment on all counts because "there is no genuine issue as to any material facts and . . . ATS is entitled to judgment as a matter of law." (*See* Mot. for Summ. J. [Doc. # 32].) The Court held oral argument on July 13, 2021.

**I. Background**

    *a. Undisputed Facts*

Plaintiff commenced employment as a Field Service Technician with Defendant ATS on April 3, 2017. (Def.'s L.R. Statement ¶ 1; Pl.'s L.R. Statement ¶ 1 [Doc. # 42].) ATS provides installation, repair, and maintenance services for cable television, telecommunications and internet service providers, and their business and residential customers. (Def.'s L.R. Statement ¶ 1; Pl.'s L.R. Statement ¶ 1.) Prior to his employment with ATS, Plaintiff was employed by Defendant's predecessor Cablevision. (Def.'s L.R. Statement ¶ 2; Pl.'s L.R.

Statement ¶ 2.) Upon commencing his employment at Cablevision, he acknowledged that his employment status was at-will. (Def.'s L.R. Statement ¶ 9; Pl.'s L.R. Statement ¶ 9.) As a Field Service Technician, both at Cablevision and ATS, Plaintiff responded to service calls from customers including installing service, repairing service problems, and disconnecting service. (Def.'s L.R. Statement ¶ 7; Pl.'s L.R. Statement ¶ 7.) Plaintiff's job duties, hours of work, and pay rate remained the same following the transition from Cablevision to ATS. (Def.'s L.R. Statement ¶ 4; Pl.'s L.R. Statement ¶ 4.)

On December 6, 2017, Plaintiff's then-supervisor Mr. Lermayer issued Plaintiff a written warning for his lack of punctuality. (Def.'s L.R. Statement ¶¶ 17-18; Pl.'s L.R. Statement ¶¶ 17-18.) Plaintiff had previously received a verbal warning. (Def.'s L.R. Statement ¶ 73; Pl.'s L.R. statement ¶ 73.) Defendant had an unwritten progressive disciplinary policy in place during Plaintiff's employment. (Def.'s L.R. Statement ¶ 19; Pl.'s L.R. Statement ¶ 19; Pl.'s Statement of Additional Material Facts [Doc. # 44] ¶¶ 38-40.) Pursuant to the progressive disciplinary policy, "sometimes there would be a verbal warning, sometimes a written warning[,] and sometimes two written warnings." (Def.'s L.R. Statement ¶ 22; Pl.'s L.R. Statement ¶ 22.) Defendant maintained that certain infractions were cause for immediate termination, and Plaintiff was unsure whether serious violations could result in immediate termination under the policy. (Def.'s L.R. Statement ¶ 23; Pl.'s L.R. Statement ¶ 23.)

On January 1, 2018, Defendant transferred Plaintiff to Robert Liquori's team, and he then reported to Mr. Liquori instead of Mr. Lermayer. (Def.'s L.R. Statement ¶ 24; Pl.'s L.R. Statement ¶ 24.) Plaintiff's job duties, payrate, and assignments did not change as a result of his transfer to a new team. (Def.'s L.R. Statement ¶ 25; Pl.'s L.R. Statement ¶ 25.) As a part of Plaintiff's job, he had to disconnect service by physically disconnecting the cable bringing phone, cable, and internet service to a residence or business. (Def.'s L.R. Statement ¶¶ 7-8; Pl.'s L.R. Statement ¶¶ 7-8.) This prevented the customer from having continued access to

certain channels or services without having paid for them. (Def.'s L.R. Statement ¶¶ 7-8; Pl.'s L.R. Statement ¶¶ 7-8.)

Shortly after Plaintiff transferred teams, Mr. Liquori became aware of a "repeat call" for Plaintiff, meaning he performed a job which he was later called in again for service within thirty days. (Def.'s L.R. Statement ¶ 34; Pl.'s L.R. Statement ¶ 34.) As a result, Mr. Liquori performed quality control checks on Plaintiff's work. (Def.'s L.R. Statement ¶ 37; Pl.'s L.R. Statement ¶ 37.) Mr. Liquori reported to his supervisors Mr. Pearson and Mr. Mancini that Plaintiff had failed to properly disconnect service for three jobs: at 96 Lapham Road, 21 Locust Street, and 36 Grove Street in New Canaan, Connecticut. (Def.'s L.R. Statement ¶ 56; Pl.'s L.R. Statement ¶ 56.) Mr. Pearson and Mr. Mancini then investigated the information provided by Mr. Liquori. (Def.'s L.R. Statement ¶ 58; Pl.'s L.R. Statement ¶ 58.) Defendant notified Plaintiff of his discharge on March 22, 2018 for failing to appropriately disconnect cable service on three jobs as reported by his direct supervisor Mr. Liquori. (Def.'s L.R. Statement ¶ 61; Pl.'s Statement of Additional Material Facts ¶ 22.)

Plaintiff was 45 at the time of his termination. (Def.'s L.R. Statement ¶ 70; *see* Pl.'s Statement of Add't'l Material Facts ¶ 2.) Plaintiff had not heard of "any discriminatory statements, jokes, slurs or stereotypes by Mr. Liquori, Ms. Mancini[,] or anyone else concerning Plaintiff's race of color," (Def.'s L.R. Statement ¶ 69; Pl.'s L.R. Statement ¶ 69), nor did Plaintiff hear any such comments regarding his age, (Def.'s L.R. Statement ¶ 71; Pl.'s L.R. Statement ¶ 71). Similarly, Plaintiff could not identify any other Black employee whom Mr. Liquori terminated. (Def.'s L.R. Statement ¶ 64; Pl.'s L.R. Statement ¶ 64.)

      b.    *Disputed Facts*

Most significantly, Plaintiff denies having failed to perform two of the three service disconnects. (Pl.'s L.R. Statement ¶¶ 51-53.) Plaintiff denies that he failed to perform the disconnect on Lapham Road, claiming that he disconnected service at the bottom of the pole instead of the top of pole due to safety issues. (*Id.* ¶ 51.) He claims that during the quality

3

control check at this location, Mr. Liquori only checked the top of the pole, not the bottom, leading him to incorrectly believe that the disconnect had not occurred. (*Id.* ¶ 52.) Plaintiff also denies that he failed to perform the Locust Avenue disconnect, explaining that shortly after he disconnected service, a new tenant moved in who wanted service, thus resulting in the cable's immediate reconnection as revealed in the quality control check. (*Id.* ¶ 53.)

The Parties also dispute whether a similarly situated white employee was not discharged for the same conduct in which Plaintiff was alleged to have engaged. (Pl.'s L.R. Statement ¶ 64.)

## II. Discussion

### a. Employment Discrimination

The CFEPA prohibits an employer from discharging an employee "because of," *inter alia*, race and age. Conn. Gen. Stat. § 46a-60(b)(1). Claims brought under CFEPA are analyzed according to the *McDonnell-Douglas* burden shifting framework used in Title VII and the ADEA. *DeAngelo v. Yellowbook Inc.*, 105 F. Supp. 3d 166, 180 (D. Conn. 2015).

> Under this analysis, the employee must first make a prima facie case of discrimination. The employer may then rebut the prima facie case stating a legitimate, nondiscriminatory justification for the employment decision in question. The employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision actually was motivated by illegal discriminatory bias.

*Jackson v. Water Pollution Control Auth. of City of Bridgeport*, 278 Conn. 692, 705 (2006) (internal quotation marks omitted). "In order to establish a prima facie case, the complainant must prove that: (1) he [was] in the protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) . . . the adverse action occurred under circumstances giving rise to an inference of discrimination." *Id.* at 705-706.

### i. Race Discrimination Claim

There is no dispute that Plaintiff satisfies the first three prongs required for a *prima facie* case of race discrimination. Plaintiff is Black. (Pl.'s L.R. Statement ¶ 1; Def.'s Mem. at 22; Def's L.R. Statement ¶ 7.) He held his position with Altice for many years. (Pl.'s L.R. Statement

4

¶ 3; Lermayer Dep. Ex. 2 to Def.'s Mem. [Doc. # 32-3] at 94.) And Defendant terminated Plaintiff's employment on March 22, 2018. (Def.'s L.R. Statement ¶ 61; Pl.'s L.R. Statement ¶ 3.) The Parties, however, vigorously dispute the fourth prong, with Defendant maintaining that there is no evidence supporting an inference of racial discrimination. (Def.'s Mem. at 27, 32-33.)

"In assessing the inferences that may be drawn from the circumstances surrounding a termination of employment, the court must be alert that employers are rarely so cooperative as to include a notation in the personnel file that their actions are motivated by factors expressly forbidden by law." *Chambers v. TRM Copy Centers Cop.*, 43 F.3d 29, 37 (2d Cir. 1994) (internal quotations and alterations omitted). "Because an employer who discriminates is unlikely to leave a 'smoking gun' attesting to a discriminatory intent, a victim of discrimination is seldom able to prove his claim by direct evidence, and is usually constrained to rely on circumstantial evidence." *Id.* The Second Circuit has identified a number of pieces of circumstantial evidence that can give rise to an inference of discriminatory intent: (1) "the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position"; (2) "the employer's criticism of the plaintiff's performance in ethnically degrading terms"; (3) "its invidious comments about others in the employee's protected group"; (4) "the more favorable treatment of employees not in the protected group"; and (5) "the timing of the discharge." *Id.* The burden on the plaintiff to make a *prima facie* showing for summary judgment is "*de minimis.*" *Dister v. Continental Group, Inc.*, 859 F.2d at 1115. But notably, any evidence used to infer a discriminatory motive must be admissible. *Chambers*, 43 F.3d at 37-38.

Plaintiff presents evidence that an employee outside of the protected class was treated more favorably. Specifically, he offers the affidavit of Jose Garcia, a former company supervisor, who states that James Sorbo, a white Field Service Technician, failed to perform

three disconnects (precisely what Plaintiff was accused of doing) yet was only verbally warned, not discharged. (Pl.'s L.R. Statement ¶ 64.) According to his affidavit, Mr. Garcia was a field service supervisor for Defendant in its Bridgeport location. (Garcia Affidavit, Ex. B to Pl.'s Mem. in Opp. [Doc. # 36-1] ¶ 7.) As a part of his job, Mr. Garcia supervised Mr. Sorbo. (*Id.*) Mr. Sorbo failed to perform three disconnects, which Mr. Garcia submitted to Manager of Human Resources Ms. Josette Mancini. (*Id.* ¶ 8.) Mr. Garcia states that Ms. Mancini told him that "Mr. Sorbo was not going to be discharged and requested that I write it up as a verbal coaching for Mr. Sorbo instead." (*Id.*) Mr. Sorbo is white. (*Id.*)

Defendant maintains that the Court should not consider this affidavit as it is inadmissible hearsay and that even if the Court did consider it, the affidavit "lacks any evidence of discriminatory animus by Ms. Mancini given her involvement in the termination of three other white Field Service Technicians." (Reply [Doc. # 47] at 7 (citing Mancini Suppl. Affidavit, Ex. C. to Reply [Doc. # 47-3]).) Although the statement in Mr. Garcia's affidavit that Ms. Mancini told him she would not fire Mr. Sorbo and instead offered verbal coaching is an out-of-court statement offered to prove the truth of the matter asserted, it constitutes an admission by a party opponent, a recognized hearsay exception. *See* Fed. R. Evid. 801(d)(2)(D). Ms. Mancini made this statement in her capacity as the Human Resources Director for Defendant who oversaw employee discipline, thereby making it a statement "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." *Id.*; *see also United States v. Rioux*, 97 F.3d 648 660 (2d Cir. 1996) (explaining that the admission of a party opponent exception requires the party seeking admission to show: "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency").

Defendant then makes arguments about why Mr. Garcia's affidavit is not credible because, for example, he is bringing his own discrimination claim against Defendant, and Ms.

6

Mancini rebuts the accuracy of Mr. Garcia's assertions. (Reply at 6-7.) But at the summary judgment stage, "the court should not weigh evidence or assess the credibility of witnesses" because "[t]hese determinations are within the sole province of the jury." *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996). Where there is a material dispute of fact, summary judgment is inappropriate.

Defendant's last argument is that, even accepting Mr. Garcia's affidavit as true, it still doesn't evince discriminatory animus because it is undisputed that "Ms. Mancini was involved in the termination of three white Field Service Technicians around the same time of Plaintiff's termination for failing to perform service disconnects and falsifying work orders." (Reply at 7.) But even that is insufficient for summary judgment in an employment discrimination claim. In *Graham v. Long Island R. R.*, 230 F.3d 34 (2d Cir. 2000), the railroad moved for summary judgment on a Black employee's race discrimination claim, pointing to evidence that "similarly situated non-black employees were treated in the same manner as plaintiff and that one other black employee was treated more favorably." 230 F.3d at 43. The Second Circuit explained that this is "insufficient to sustain summary judgment" because "Title VII's principal focus is on protecting individuals, rather than a protected class as a whole." *Id.* Therefore, "[o]nly where overwhelming evidence exists that an employer acted for reasons other than discrimination will the proof submitted by the plaintiff as to similarly situated employees be negated." *Id.*

Because Plaintiff offers admissible evidence that a white employee failed to perform three disconnects and was given only coaching instead of termination, he has offered evidence sufficient to raise an inference of racial animus for summary judgment purposes. Since Plaintiff made a *prima facie* case, the burden shifts to Defendant to produce "admissible evidence . . . which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993) (emphasis in original). Here, Defendant asserts repeatedly that it

7

terminated Plaintiff not because of his race or color, but because of his failure to manually disconnect service at three job sites following previous unrelated discipline, which included a verbal and a written warning. Plaintiff agrees that his failure to disconnect service on three jobs was the reason given for his termination. Accordingly, Defendant has set forth a legitimate, non-discriminatory reason for Plaintiff's termination, i.e. his poor work performance, not his race or color, which satisfies its burden under the *McDonnell-Douglas* framework.

Once Defendant has met its burden of proffering a nondiscriminatory reason for the adverse employment action, Plaintiff must demonstrate "that the reason proffered by the employer is merely a pretext and that the decision actually was motivated by illegal discriminatory bias." *Jackson*, 278 Conn. at 705. "To avoid summary judgment in an employment discrimination case, the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008). Thus, Plaintiff must identify "sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that the decision to fire him was based, at least in part," on his race, color, and/or age. *Id.* at 141. "[A] plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Id.* at 137. "For the case to continue, the plaintiff must . . . come forward with evidence that the defendant's proffered, non-discriminatory reason is mere pretext for actual discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).

Plaintiff maintains that Defendant's proffered reason for his termination is pretextual because he actually performed two of the three disconnects at issue. Moreover, he explains why Defendant's photographs showing the cables as still connected may not be reliable indicia of his failure to disconnect service since service was reconnected at one address and

8

the disconnect was performed at the bottom, not the top, of the utility pole in another. While a finder of fact may or may not credit Plaintiff's statements in light of Defendant's evidence, this dispute of fact is enough to survive summary judgment because "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). Thus, the existence of a dispute as to whether Defendant's proffered reason for termination was sincere or false is sufficient to withstand summary judgment.

For these reasons, Defendant's Motion for Summary Judgment as to Plaintiff's race discrimination claim will be denied.

### ii. Age Discrimination Claim

Courts evaluate age discrimination claims under the same burden-shifting framework used in race discrimination claims. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010). However, unlike with race discrimination, plaintiffs in ADEA cases must "prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 176 (2009). Thus, the mixed-motive analysis applicable in Title VII cases does not apply ADEA cases, though it may apply to CFEPA claims.[1] *See Gorzynski*, 596 F.3d at 106.

---

[1] The Connecticut Supreme Court has not yet decided the issue, but application of the *Gross* rule appears disfavored in Connecticut trial courts. *See, e.g.*, *Wagner v. Bd. of Trustees for Conn. State Univ.*, 2012 WL 669544, at *12 (Conn. Super. Ct. Jan. 30, 2012) ("For the foregoing reasons, the court declines to apply the United States Supreme Court's interpretation that in an action brought under the ADEA the plaintiff is required to prove that age was the but-for cause of the challenged adverse employment action." (internal quotations omitted)); *Frederick v. Gladeview Health Care Center, Inc.*, 2014 WL 1876955, at *5 (Conn. Super. Ct. Apr. 10, 2014) ("Until our appellate courts say otherwise, this court will continue to apply the mixed motive and pretext models.") (internal quotations omitted)); *Gonska v. Highland View Manor, Inc.*, 2014 WL 3893100, at *8 (Conn. Super. Ct. June 26, 2014) ("This court has also rejected an invitation to apply the 'but for' test to age discrimination claims."); *Harmon v. Univ. of Conn.*, 2018 WL 1475874, at *10 ("[T]he court shall not apply the 'but for' standard [in this age discrimination case]."); *see also Vale v. City*

It is again undisputed that Plaintiff satisfies the first three prongs of a *prima facie* discrimination claim, this time regarding his age. Plaintiff was 45 at the time of his termination, and he had held his position for many years before he was then fired. Defendant maintains, however, that "there is no evidence of discriminatory animus or differential treatment based on Plaintiff's age." (Def.'s Mem. at 33.) Plaintiff appears to claim that the timing of his discharge, which occurred approximately two years before he became eligible to participate in the company retirement plan, coupled with Defendant's departure from its progressive discipline policy creates an inference of age-based discrimination.

However, Plaintiff does not make out an age-based discrimination claim because his evidence does not raise an inference that the adverse employment action was a result of discriminatory animus regarding his age. Even accepting, for the purposes of argument, that Defendant departed from its employment policies in terminating Plaintiff, that alone is not enough to give rise to the inference of age discrimination. "The existence of [an] early retirement plan is not evidence of age discrimination" because the "ADEA creates a safe harbor for voluntary early retirement plans that are 'consistent with the relevant purpose or purposes' of the ADEA." *Fagan v. New York State Elec. & Gas Corp.*, 186 F.3d 127, 133 (2d Cir. 1999) (quoting 29 U.S.C. § 623(f)(2)(B)(ii)). And more importantly, without more, discharging an age-eligible employee to prevent retirement benefits from vesting does not violate the ADEA (although such conduct could violate ERISA).[2] *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 612 (1993). In the absence of any younger comparators being given preferential treatment or any hostile comments regarding age or any age-based conduct,

---

*of New Haven*, 197 F. Supp. 3d 389 (D. Conn. 2016) for a fuller discussion of application of the "but for" standard in CFEPA claims in both federal and state courts.

[2] The Supreme Court left open whether "an employer who targets employees with a particular pension status *on the assumption that these employees are likely to be older* thereby engages in age discrimination" in using pension status as a proxy for age. *Id.* at 612-613 (emphasis added).

there is no evidence from which a jury could reasonably infer age discrimination and Plaintiff fails to make a *prima facie* case.

Because Plaintiff fails to make a *prima facie* case, the Court need not resolve the question of whether the mixed motive analysis excluded by the ADEA applies to CFEPA claims. Defendant's motion for summary judgment on Plaintiff's CFEPA claim on the basis of age is therefore granted.

### b. *Negligent Misrepresentation*

In Connecticut, a negligent misrepresentation claim requires a plaintiff to establish "(1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." *Nazami v. Patrons Mutual Ins. Co.*, 280 Conn. 619, 626 (2006). To survive summary judgment, a plaintiff must be able to point to evidence indicating that the speaker of the misrepresentation "knew, or should have known, [the] statements were untrue *at the time they were made.*" *Bellsite Dev, LLC v. Town of Monroe*, 155 Conn. App. 131, 152 (2015) (emphasis in original). "[T]he plaintiff need not prove that the representations made by the [defendant] were promissory. It is sufficient . . . that the representation contained false information." *D'Ulisse-Cupo v. Board of Dirs. of Notre Dame High School*, 202 Conn. 206, 218 (1987).

Plaintiff contends that Defendant negligently misrepresented that it had a progressive disciplinary policy that it would apply to Plaintiff. (Pl.'s Mem. at 43.) Although the parties dispute whether Plaintiff received the promised progressive discipline, the Court need not resolve that dispute here since Plaintiff fails to point to any evidence, besides his termination, suggesting that Defendant knew or should have known at the time it represented to him that it had a progressive disciplinary policy that it did not intend to apply that policy to Plaintiff. Plaintiff might have been able to show this by, for example, presenting evidence that Defendant was already failing to comply with its own progressive discipline

11

policy with other employees at the time it promised Plaintiff a progressive discipline policy. Such evidence could make it probable that Defendant never had any intention of complying with its policy. But the mere fact that progressive discipline was promised but not fulfilled alone falls short of showing negligent misrepresentation. *Cf. Doe v. Wesleyan Univ.*, 2021 WL 664010, at *12 (D. Conn. Feb. 19, 2021) (dismissing negligent misrepresentation claims because the plaintiff failed to plausibly allege that the defendant knew or should have known its disciplinary policies set forth in the handbook would not be honored with respect to the plaintiff at the time the handbook was published). Accordingly, Defendant's motion for summary judgment as to negligent misrepresentation is granted.

        c.        *Promissory Estoppel*

Connecticut recognizes a cause of action for promissory estoppel which "permits recovery based on a sufficiently clear and definite promise, even in the absence of the consideration required to create a contract." *Cweklinsky v. Movil Chemical Co*, 364 F.3d 68, 77 (2d Cir. 2004) (citing *D'Ulisse-Cupo*, 202 Conn. 206 at 221). Promissory estoppel is

> predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury.

*Connecticut Nat'l Bank v. Voog*, 233 Conn. 352, 366 (1995) (internal citations and quotation marks omitted). Although promissory estoppel claims sound in contract, the promise upon which the promisee relies need not be as "specific and definite [as] an offer to enter into a contract," and "a promise need not be the functional equivalent of an offer to enter into a contract." *Stewart*, 267 Conn. at 108. "An employer's promise to follow a system of progressive discipline may be clear and definite enough to support an action for promissory estoppel." *Dancho v. Bridgeport Hosp.*, 1994 WL 685026, at *2 (Conn. Super. Nov. 29, 1994). "[W]hether a representation rises to the level of a promise is generally a question of fact, to be determined in light of the circumstances under which the representation was made." *Id.* at 106.

Plaintiff maintains that he was repeatedly promised a progressive disciplinary policy, forewent seeking other opportunities in reliance on that promise, and was ultimately discharged without application of that policy. (Pl.'s Mem. at 50-51.) Defendant responds that it is "demonstrably false" that a progressive disciplinary policy was not applied to Plaintiff since he admits "that he received both a written warning and a verbal warning from Mr. Leymeyer just prior to his discharge in March 2018." (Reply at 10.)

Plaintiff claimed at oral argument that despite those warnings, Defendant still failed to apply the policy because it admittedly fired him for his alleged failed disconnects and not for his cumulative wrongdoing. This argument is unpersuasive. First, Plaintiff's termination for the disconnects could be consistent with application of a progressive discipline policy as his termination on the basis of the disconnects does not preclude other reasons from factoring into the termination decision under a progressive discipline policy. [3] Second, that Plaintiff disputes that he actually performed two of three disconnects also does not adequately rebut that a progressive discipline policy was applied to him. Plaintiff admits that he received escalating discipline. Moreover, he does not even dispute Defendant's evidence with respect to one of the three alleged disconnects, and Plaintiff offers no rebutting evidence that he received increasingly harsh discipline related to his job performance, resulting in his termination upon the third incident of misconduct. While evidence that other white employees were afforded more leniency prior to termination, as Plaintiff claims, may bear on Plaintiff's race discrimination claim, it is not evidence of a promissory estoppel claim since it not probative of whether he was denied progressive discipline.

Accordingly, Defendant's motion for summary judgment on promissory estoppel is GRANTED.

---

[3] Plaintiff reiterated at oral argument that he was only promised a general progressive discipline policy, not any particular steps or procedures as a part of that policy. Had Plaintiff articulated a promise of such steps, his termination without their implementation might suffice as a cognizable promissory estoppel claim.

13

### III.     Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. # 32] is GRANTED as to age discrimination under the CFEPA, negligent misrepresentation, and promissory estoppel and DENIED as to race discrimination under the CFEPA. This case will now proceed to a bench trial inasmuch as neither party has claimed a jury trial.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 6th day of August 2021.